## ILWACO RY. & NAV. CO. v. OREGON SHORT LINE & U. N. RY. CO.

(Circuit Court of Appeals, Ninth Circuit.    July 17, 1893.)

### No. 77.

CARRIERS—INTERSTATE COMMERCE ACT—CONNECTING LINES—DISCRIMINATION.
A transportation company operating a railway and a line of steamboats connecting at the company's wharf is not required, by the third section of the interstate commerce act, to permit the boats of a competitor to land at such wharf.

Appeal from the Circuit Court of the United States for the Western Division of the District of Washington.

In Equity. Bill by the Oregon Short Line & Utah Northern Railway Company against the Ilwaco Railway & Navigation Company for violation of the interstate commerce act. A decree was rendered for complainant. 51 Fed. Rep. 611. Respondent appeals. Reversed.

Thomas N. Strong, (C. W. Fulton and C. A. Dolph, on the brief,) for appellant.

W. W. Cotton, (Zera Snow, on the brief,) for appellee.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

McKENNA, Circuit Judge. The plaintiff contends that defendant, by preventing it from landing its boats at a wharf owned and used by defendant, discriminates against it, contrary to section 3 of the interstate commerce act.

The facts are as follows:

That prior to the month of August, 1888, the defendant was named the Ilwaco Steam Navigation Company, but in that month it filed supplemental articles of incorporation, changing its name to Ilwaco Railway & Navigation Company, and proceeded to construct a line of railway from a point at or near the town of Ilwaco on the Pacific ocean, in the state of Washington, to a point on the navigable waters of Shoal Water bay, in Pacific county. That the construction of said railway was commenced before, but completed after, the filing of said supplemental articles. That prior to the construction of said railroad line the defendant owned and operated a line of steamboats between the town of Astoria, Or., and the town of Ilwaco. That the shores of the Pacific ocean in that vicinity were popular summer resorts during the months of July and August and the first week of September. That prior to 1888 the Oregon Railway & Navigation Company owned the boats and line between Astoria and Portland, Or., which plaintiff now owns, and carried passengers from Portland to Astoria, which were then transferred to plaintiff's boats, and carried to Ilwaco, from whence they went to the ocean beach in wagons. That in the summer season of the years 1888, 1889, 1890, and 1891 the Oregon Railway & Navigation Company asked and obtained permission to land its passengers on the wharf at Ilwaco, paying a compensa-

tion therefor. That complainant only ran its boats during said summer months, and only while people were traveling to said summer resorts. Said town of Portland, Or., is situated on the Willamette river, about 100 miles inland, easterly from the said city of Astoria, which latter city is situated on the left bank of the Columbia river, and about 12 miles inland from the ocean; and the town of Ilwaco is situated on the right bank of the Columbia river, at a part thereof known as "Baker's Bay," and about 15 miles distant, in a northwesterly direction, from said city of Astoria. That in the year 1892 complainant desired the same privileges, but respondent refused.

When defendant constructed its said railway, leading from its said wharf to a point on Shoal Water bay, it made the said wharf the southern terminus of such line of railway, and there arranged and provided its terminal facilities for its said railway line, and also provided for landing its own boats thereat, but made no provision for landing any other boats; and said wharf ever since has been, and is, the southern terminus, and the principal terminus, of said line, and the principal office of the defendant is at said town of Ilwaco. That when the complainant and its said lessor commenced running its boats during said summer seasons, and continued so doing, as aforesaid, it commenced and continued carrying passengers from said city of Astoria to defendant's said terminus as well, and defendant soon ascertained that its business, instead of increasing, as it should have done, with its additional facilities for accommodating travel on its said railway, and also in new and better boats, which it also constructed and operated, was decreasing, and that it was necessary for it to take some step to protect and increase its business, and to recover its old business. That respondent is able to accommodate all the travel. That there is but one slip or landing place at said wharf, and defendant was sometimes obliged to moor its boats outside of plaintiff's, and transfer the freight and passengers across the same. That confusion was thereby caused, and the patronage of defendant's boats lessened. That said wharf is constructed at the end of a trestle running out from the shore of the Columbia river thereto, on which trestle is also a wagon road for teams and foot-passengers to travel,—safe, secure, and convenient. That said trestle extends over and across the tide land adjacent to the bank of said river, but said trestle and wharf were constructed there by defendant, under a claim of ownership of the said tide land, prior to the date of the admission of the state of Washington, as a state, into the Union, and while it was yet a territory of the United States; and said town of Ilwaco is, and during all the times herein stated, since the admission of the state of Washington into the Union, has been, an incorporated town, under the laws of Washington, but the corporation limits thereof extend only to the line of ordinary high tide of said Columbia river. That the harbor lines of the said town of Ilwaco have not yet been located, but the United States government, through its proper officials, is now

proceeding to locate the same. That prior to the commencement of this suit, to wit, on the ———— day of ————, 1892, defendant duly applied, in writing, to the state board of equalization of Washington, to have such tide lands appraised, and has duly applied to purchase the same, but no appraisement thereof has been made yet, but defendant has the preferred right to purchase the same, and it intends to avails itself of such right.

That defendant has, during all the time since it constructed said wharf, used it as its own private property, and not as a public wharf, and has refused at all times to allow any other person or persons, firm or corporation, to use it, or share in the use thereof, and has refused at all times to allow any boats, steamers, or craft, excepting its own, to land thereat, except the times when it permitted complainant's boats and said Oregon Railway & Navigation Company's boats to land thereat, as aforesaid, and for the consideration aforesaid paid to defendant, and it is not now permitting, and it never has permitted, any other boats than its own, with the exception hereinbefore stated, to land thereat; and, since the complainant discontinued landing its boats at said wharf, no boats whatever, excepting defendant's own boats, have been allowed or permitted to land thereat. That provision is made at the defendant's terminus for selling tickets, but that this is only for the purpose of supplying persons brought there by defendant's boats, and there is no general or public station there. The regular station, and the first station on defendant's said line of railway, going north, is the one in said town of Ilwaco, aforesaid, at which station the defendant has the usual station facilities and accommodations for receiving passengers and freight. That this station is 4,035 feet distant from the wharf. That there is another wharf at said town 1,600 feet from defendant's wharf, and 2,567 feet distant, over the regularly traveled streets from defendant's station at Ilwaco, at which complainant's boats landed in 1892. That, on its said wharf, defendant leaves cars, when not in use, and whereon it places them to be loaded, and this affords the only terminal facilities which it has. That complainant and defendant are competitors.

On these facts the plaintiff contends that defendant, by excluding the plaintiff's boats from its wharf, offends against section 3 of the act to regulate commerce. It attempts to support this contention by dividing defendant's line, and making its railroad part and its steamboat part connecting lines, as defined in said section 3. The first subdivision of the section is as follows:

"That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage, in any respect whatsoever."

But is the division of defendant's line justifiable? The parts of the line have not independent ownership. The defendant company

was organized for the purpose of constructing a transportation route from Astoria, Or., to Shoal Water bay, Wash. Its means of transportation are steamboats and a railroad. The wharf at Ilwaco makes the connection between them, and the continuity of the route. The act contemplates, we think, independent carriers, capable of mutual relations, and capable of being objects of favor or prejudice. There must be at least two other carriers besides the offending one. For a carrier to prefer itself in its own proper business is not the discrimination which is condemned.

We do not think that the cases cited by appellee militate with these views, nor do they justify a railroad company combining with its proper business a business not cognate to it, and discriminating in favor of itself, as it might in counsel's illustration of a combination of a railroad company with the Standard Oil Company, or as illustrated in the cases of Baxendale v. Great Western Ry. Co., 1 Railway & Canal Traffic Cas. 202; Same v. London & S. W. Ry. Co., Id. 231; and Parkinson v. Railway Co., Id. 280. In all these cases the railroad company attempted to discriminate in favor of itself as carrier, separate from its capacity as a railway carrier. We find no difficulty of concurring in these cases, and distinguishing them from the case at bar. It was not to engage in the business of drayman, as Cockburn, C. J., indicates in the first case, that great powers have been given to railway companies, and, if permitted to be so used, might indeed be converted into a means of very grievous oppression. The principle of these cases does not extend to boats owned by railroads, as a part of a continuous line. Nor do we think the case, Indian River Steam-Boat Co. v. East Coast Transp. Co., (Fla.) 10 South. Rep. 480, sustains complainant. It was a case of discrimination. The action was between two competing steamboat companies, in favor of one of which a railroad company had discriminated by leasing its wharf. Both companies were independent of the railroad, and both connecting lines with it. But the court recognized the right of the railroad company and the Indian River Company to build and maintain a wharf, as incidental to their business, saying: "If either company should erect a dock or wharf for its private use, we know of no law to prohibit it." Page 492. The steamboats were competing lines, and the statutes of Florida regulating railroads provided that no common carriers subject to the provisions should "make any unjust discrimination in the receiving of freight from or the delivery of freight to any competing lines of steamboats in this state." The decision, therefore, was sustained by the laws of the state. The reasoning of the court, beyond this, seems to be in conflict with the Express Cases decided by the supreme court of the United States. 117 U. S. 29, 6 Sup. Ct. Rep. 542, 628.

It is not clear what complainant claims from the second subdivision of section 3, besides what it claims from the first subdivision. The second subdivision is as follows:

"Every common carrier subject to the provisions of this act shall, according to their respective powers, afford all reasonable, proper and equal facilities

for the interchange of traffic between their respective lines, and for the receiving, forwarding, and delivering of passengers and property to and from their several lines and those connecting therewith, and shall not discriminate in their rates and charges between such connecting lines; but this shall not be construed as requiring any such common carrier to give the use of its tracks or terminal facilities to another carrier engaged in like business."

The contention of complainant is not that defendant's facilities are inadequate, but that it is excluded from them. The exclusion, however, only consists in the prevention of the landing of its boats at defendant's wharf. We have probably said enough to indicate our views of this, but we may add that the wharf does not seem to be a public station. It is a convenience, only, in connecting its railroads and boats; the general station being at Ilwaco, where ample facilities exist.

Judgment reversed, and cause remanded for further proceedings.